# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CANYA AVIANA HARP, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| v. | : | |
| | : | No. 2:23-cv-02577-GAM |
| POLICE AND FIRE FEDERAL CREDIT UNION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S MOTION TO DISMISS
## <u>PLAINTIFF'S COMPLAINT</u>

Defendant Police and Fire Federal Credit Union, by and through its undersigned counsel, respectfully requests that this Court enter an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing Plaintiff's Complaint with prejudice. Defendant relies upon the accompanying Memorandum of Law in support of this Motion.

Dated:  August 1, 2023

Respectfully submitted,

*/s/ John J. Higson*
John J. Higson, Esquire (PA ID 80720)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
jhigson@dilworthlaw.com
(215) 575-7000

*Attorney for Defendant Police & Fire Federal Credit Union*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CANYA AVIANA HARP, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| v. | : | |
| | : | No. 2:23-cv-02577-GAM |
| POLICE AND FIRE FEDERAL CREDIT UNION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT**

123338844-4

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTS AS PLED IN THE COMPLAINT ................................................................... 1

III.    LEGAL STANDARDS ................................................................................................. 4

IV.     ARGUMENT ................................................................................................................ 5

        A.      Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Pursuant to Rule 12(b)(6). ..................................................................................................... 5

                1.      Plaintiff's Complaint Does Not Implicate the Federal Reserve Act in Any Way. ...................................................................................................... 6

                2.      Ms. Harp's Allegations of "Security Fraud" are Hopelessly Vague and to the Extent a Basis for the Allegations Can be Discerned, Fail to State a Claim... 8

                3.      Ms. Harp's Allegations Regarding Breach of Contract Fail to State a Claim Because PFFCU's Terms and Conditions Expressly Grant PFFCU the Right to Refuse Any Instrument for Deposit. ......................................................... 9

                4.      Ms. Harp's Claims for Breach of Fiduciary Duty Should Be Dismissed Because Banks and Credit Unions Do Not Owe Fiduciary Duties to Ordinary Customers under Pennsylvania Law. ........................................................... 10

                5.      Ms. Harp does not Plead Allegations Sufficient to Establish that PFFCU was a Trustee for her Benefit. ............................................................................ 12

        B.      Amendment Would Be Futile ............................................................................ 14

V.      CONCLUSION ........................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)......................................................................................................4, 5, 12

*Baraka v. McGreevey,*
  481 F.3d 187 (3d Cir. 2007)...................................................................................................4, 14

*Basement Solutions LLC v. Wells Fargo Bank, NA,*
  Civ. No. 21-104, 2021 WL 352012 (E.D. Pa. Feb. 2, 2021) ...................................................11

*In re Bates,*
  58 B.R. 915 (Bankr. W.D. Tenn. 1986)....................................................................................7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................................................4

*Carloti v. Emps. of Gen. Elec. Credit Union No. 1161,*
  717 A.2d 564 (Pa. Super. Ct. 1998).........................................................................................11

*Clauser v. World's Foremost Bank,*
  No. 3:17-CV-0159, 2018 WL 5660751 (M.D. Pa. Mar. 30, 2018) .........................................6

*Dura Pharmaceuticals, Inc. v. Broudo,*
  544 U.S. 336 (2005).................................................................................................................8

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (2009).................................................................................................................4

*Holst v. Oxman,*
  290 F. App'x 508 (3d Cir. 2008) ..............................................................................................14

*Hudson v. U.S.,*
  522 U.S. 93 (1997)...................................................................................................................7

*Johnson v. Hill,*
  910 F. Supp. 218 (E.D. Pa. 1996) ............................................................................................5

*Lockton v. Lockton,*
  157 F. Supp. 181, 3 V.I. 277 (D.V.I. 1957) .............................................................................9

*MGMT Residential, LLC v. Reeves,*
  No. CV 22-3966, 2023 WL 2471263 (E.D. Pa. Mar. 10, 2023)..............................................9

*Milam v. United States,*
  524 F.2d 629 (9th Cir. 1974) ...................................................................................................6

*Nikimiha Sec. Ltd. v. Trend Grp. Ltd.*,
  646 F. Supp. 1211 (E.D. Pa. 1986) ................................................................................9

*Provenza v. Comptroller of Treasury*,
  497 A.2d 831 (Md. App. 1985) ......................................................................................6

*Reeves v. Middletown Athletic Ass'n*,
  866 A.2d 1115 (Pa. Super. 2004) ..................................................................................9

*Rosenbaum and Assocs., P.C. v. Scheff*,
  287 A.3d 897 (Pa. Super. 2022) ..................................................................................11

*Rundus v. Chertoff*,
  242 F. App'x 143 (5th Cir. 2007) ..................................................................................6

*Matter of Seidman*,
  37 F.3d 911 (3d Cir. 1994) ............................................................................................7

*Shahin v. Delaware Federal Credit Union*,
  602 Fed. App'x 50 (3d Cir. 2015) ...............................................................................11

*SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*,
  499 F. Supp. 3d 49 (D. Del. 2020) ...............................................................................8

*Vallerey Stylianoudis v. Westinghouse Credit Corp.*,
  785 F. Supp. 530 (W.D. Pa. 1992) ..............................................................................14

**Statutes**

20 Pa. C.S.A. § 7701, *et seq.*................................................................................12, 13

Federal Reserve Act, 12 U.S.C. § 221 ...............................................................3, 5, 6, 8

Federal Reserve Act, 12 U.S.C. § 411 *et seq.* ...........................................................3, 6

Federal Reserve Act, 12 U.S.C. § 504 .......................................................................3, 4, 7

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ..............................................8

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4.........................................8

**Other Authorities**

Fed. R. Civ. P. 9(b)..........................................................................................................8

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 5, 6, 9

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Police and Fire Federal Credit Union, by and through its undersigned counsel, respectfully submits its Memorandum of Law in support of its Motion to Dismiss the Complaint filed by Plaintiff Canya Aviana Harp.

## I.        Introduction

Canya Harp ("Plaintiff" or "Ms. Harp") is a member of defendant Police and Fire Federal Credit Union ("PFFCU").  In a span of seventeen days between March 21, 2023 and April 6, 2023, Ms. Harp incurred charges totaling $5,480.46 on her PFFCU VISA credit card, in excess of the $5,000 credit limit. She did not make any payments toward the balance.  Instead, in May of 2023, Ms. Harp delivered to PFFCU a paper purporting to be a "Federal Reserve note" and/or "bill of exchange," claiming that it constituted valid legal tender in payment of her outstanding credit card debt.  As PFFCU informed Ms. Harp on June 13, 2023, the purported instrument she submitted is not valid legal tender and does not in any way operate to satisfy her debt.

On July 7, 2023 Ms. Harp filed a Complaint (the "Complaint") *pro se* claiming, among other things, that PFFCU committed myriad violations of federal law by failing to accept the "federal reserve note" and/or "bill of exchange," and demanding relief in excess of $5,000,000. Because the Complaint fails to state a claim for relief as a matter of law, Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.       Facts as Pled in the Complaint

Ms. Harp is a member of defendant Police and Fire Federal Credit Union.  [Complaint Ex. A at 6.][1] Ms. Harp has a PFFCU VISA credit card with a card number ending with the digits 5677. [*Id.*, at 1, 3, 4, 6, 7.]

---

[1]    Plaintiff attached numerous documents as exhibits to the Complaint. The documents are not labeled separately. For the sake of clarity and consistency, Defendant cites all exhibits as "Complaint Ex. A" with the corresponding page number.

123338844-4

By May 11, 2023, Ms. Harp had accrued a balance of $5,480.46 on her PFFCU VISA, which was almost $500.00 over her credit limit of $5,000.00.  [*Id.* at 4-5.]  Because her account was overdrawn and already past due, the "minimum payment" due on June 5, 2023 was $754.46.  [*Id.*]  This amount was stated on the remittance slip attached at the bottom of that month's credit card statement (the portion under the line stating "Detach the bottom portion and return payment using enclosed envelope to be received no later than by 5:00 p.m. on the due date.") (the "Enclosure Form").  [*Id.*]

Ms. Harp alleges that on May 31, 2023, she tendered payment to PFFCU to satisfy her credit card debt "via bill of exchange pursuant to the Bills of Exchange Act."[2]  [Complaint Section III(C) ¶ 2.]  Ms. Harp's May 31 correspondence[3] to PFFCU stated "I hereby instruct the Chief Financial Officer John LaRosa to apply the Principal's balance to the Principal's account… for each and every billing cycle for set-off," and insisted that "I have performed my contractual obligations by remitting payment via *bill of exchange* as collateral security and *legal tender*…"  [Complaint Ex. A at 12 (emphasis added).]

However, the "payment," "bill of exchange" or "legal tender" Ms. Harp alleges she tendered to PFFCU to satisfy her credit card debt was nothing more than the Enclosure Form, indicating that the "Amount Enclosed" was $5,480.46, and on which she made handwritten notes stating "ACCEPTED", "PAY TO BEARER", "PAY WITH INTEREST" and "PAY ON DEMAND."  [Complaint Ex. A. at 6.]  As demonstrated by the Complaint and accompanying exhibits, Ms. Harp alleges that the doctored Enclosure Form *was* the payment, and *does not* allege

---

[2]    While Ms. Harp references the "Bills of Exchange Act," it is not entirely clear to what she is referring. The "Bills of Exchange Act" is an 1882 United Kingdom Act of Parliament. https://www.legislation.gov.uk/ukpga/Vict/45-46/61. There is no Act of the United States Congress with the same or similar title.

[3]    It appears that Ms. Harp's allegation regarding delivering "payment" on May 31 is a reference to her letter dated May 30, 2023 at Complaint Ex. A. at 12. At several points in the Complaint, Ms. Harp's allegations are inconsistent with the dates on various letters by one day.

that she enclosed a check, cash, or any other valid instrument for payment and satisfaction of her debt.  [*See generally* Complaint and Complaint Exhibits.]

On May 31, 2023, PFFCU sent Ms. Harp a notice stating that it had not received payment for her PFFCU VISA.  [Complaint Ex. A at 13.]  Ms. Harp alleges that she again delivered a copy of the "bill of exchange" by correspondence to PFFCU in a letter dated June 7, 2023, in which she asserted that PFFCU was in violation of the Federal Reserve Act. [Complaint at Section III(C) ¶ 3; Complaint Ex. A at 14.]

On June 13, 2023, PFFCU sent a letter to Ms. Harp informing her that the documents she delivered in her previous correspondence, including the notated Enclosure Form, "are not Federal Reserve notes or other legal tender, are not legally effective and do not constitute payment of your outstanding Visa balance." [Complaint Ex. A at 1.]

Ms. Harp alleges that on June 20, 2023 she sent another letter to PFFCU "displaying the assessed damages and penalties accrued from their violations of Section 29 of the Federal Reserve Act."  [Complaint Section III(C) ¶ 4.]  In that letter Ms. Harp again asserted that she performed her "contractual obligations by remitting payment via bill of exchange as collateral security and legal tender" to PFFCU, and asserting that PFFCU was engaging in "unsafe and unsound practices," breaching its contractual obligations, and breaching fiduciary duties.  [Complaint Ex. A at 15.]  In her June 20 correspondence, Ms. Harp contended that PFFCU is liable to pay penalties of $1,000,000 per day "for your bank violating provisions stated in Section 16 of the Federal Reserve Act…"  [*Id.*, at 18.]  Her June 19 letter concluded that "[i]f no response or no performance is made by [PFFCU]… [I] will assess damages and penalties of $5,325,000." [*Id.*]

On June 21, 2023, Ms. Harp sent yet another letter to PFFCU positing that

> The documents I… sent… **are legal tender and Federal Reserve notes**. The application… submitted to PFFCU was a bond which is an obligation of the United States and collateral security which generates interest. Pursuant to 18 United States Codes 8, bills (bills

> of exchange) are obligations of the United States and pursuant to
> The Federal Reserve Act… are redeemable in lawful money at any
> Federal Reserve Bank… at any member bank which makes bills of
> exchanges legal tender."

[*Id.*, at 3 (emphasis added).]

In sum, Ms. Harp alleges that "Defendant failed to deposit Plaintiff's legal tender which resulted in a breach of contract and security fraud." [Complaint at Section III(C) ¶ 1.] Ms. Harp also alleges that by refusing to deposit the alleged "legal tender," PFFCU breached "fiduciary duties owed to Plaintiff." [*Id.*, at Section III(C) ¶ 5.] She alleges further that due to PFFCU's refusal to deposit the "legal tender," PFFCU engaged in "unsafe and unsound practices" and that PFFCU was a "trustee." [*Id.*, at Section III(C) ¶ 5.]

Ms. Harp requests damages of $5,480.46 "for the amount of the bill of exchange," damages in excess of $5,000,000 for alleged violations of Section 29 of the Federal Reserve Act, and $2,000 in "reasonable fees and costs." [*Id.*, at Section V.]

## III.    <u>Legal Standards</u>

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not credit either plaintiff's "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss, particularly where the complaint is "devoid of further factual enhancement." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The Third Circuit has recognized, "after *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (2009); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (The court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a

factual allegation."). While a *pro se* party may be entitled to some marginal deference as to technical procedural failings, the standards demanded by Rule 12(b)(6) and the elements of the cause of action remain unchanged. *See, e.g. Johnson v. Hill*, 910 F. Supp. 218, 221 (E.D. Pa. 1996) (dismissing *pro se* complaint despite deference).

IV.   **Argument**

Simply stated, Ms. Harp ran up her credit card to its limit, and now sets forth a litany of confusing and meritless arguments in an attempt to escape from her debt. Ms. Harp's Complaint says very much and very little at the same time. The Complaint is littered with inapplicable legal terms and conclusory allegations. But regardless of the particular causes of action she attempts to establish, it is clear that the Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

A.   **Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Pursuant to Rule 12(b)(6).**

A review of the Complaint and its accompanying exhibits demonstrates that Ms. Harp's purported "Federal Reserve Note" and/or "Bill of Exchange" is nothing more than a detached portion of her credit card statement with handwritten notes that she asks the Court to believe transformed it into a legitimate form of legal tender. The claims Ms. Harp sets forth are facially implausible, and she fails to plead any facts which would allow the court to draw a "reasonable inference" that PFFCU is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Specifically, (1) Plaintiff's allusions to the Federal Reserve Act are misguided and the allegations do not implicate the Federal Reserve Act in any way; (2) the pleadings are vague as to any claim for "security fraud" and to the extent a claim can be discerned, the allegations fail to state a claim; (3) the clear terms of the applicable contract specifically grant PFFCU the right to reject any check or instrument for deposit; (4) Ms. Harp does not allege any facts giving rise to a fiduciary duty owed her by PFFCU; and (5) Ms. Harp's conclusory allegations regarding a "breach of trust" have no

basis in fact or law.  Because of all Ms. Harp's claims arise from the same core theory – her obviously erroneous claim that the doctored Enclosure Form is a "Federal Reserve note," "bill of exchange" or any other form of "legal tender" – this court should dismiss Ms. Harp's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

1.      **Plaintiff's Complaint Does Not Implicate the Federal Reserve Act in Any Way.**

In her Complaint, Ms. Harp repeatedly contends that the modified Enclosure Form which she submitted to PFFCU constitutes a "Federal Reserve note."  Ms. Harp seeks to invoke the Federal Reserve Act, which created the Federal Reserve System and, among other things, authorized the Federal Reserve to issue Federal Reserve notes.  Federal Reserve notes are better known as "dollar bills." *Clauser v. World's Foremost Bank*, No. 3:17-CV-0159, 2018 WL 5660751 at *13 (M.D. Pa. Mar. 30, 2018); *Rundus v. Chertoff*, 242 F. App'x 143, 144 (5th Cir. 2007); *Milam v. United States, 524 F.2d 629* (9th Cir. 1974).  Ms. Harp does not allege that she delivered actual Federal Reserve notes (cash) to PFFCU for payment of her debt, and it is clear that her purported "Federal Reserve note" is not what she claims it is.

Section 16 of the Federal Reserve Act, codified at 12 U.S.C. § 411-421, pertains to the issuance and redemption of Federal Reserve notes.  For example, the purpose of 12 U.S.C. § 411 is to make clear that Federal Reserve notes are authorized currency of the United States. *Provenza v. Comptroller of Treasury*, 497 A.2d 831, 833-34 (Md. App. 1985).  The purpose of Section 16 of the Federal Reserve Act as a whole is to delegate various powers to the Federal Reserve System. *Milam*, 524 F.2d 629.  Despite Ms. Harp's bald assertions that the Enclosure Form somehow constitutes a "Federal Reserve note", Section 16 (a statute delegating power to the Federal Reserve System) makes clear that only the Federal Reserve can issue them. Ms. Harp's attempt to claim that the statute somehow supports her claim is therefore wholly without merit.

123338844-4

Furthermore, Ms. Harp seeks to recover damages in excess of $5,000,000 pursuant to Section 29 of the Federal Reserve Act, alleging that PFFCU engaged in "unsafe and unsound practices."  Section 29, codified at 12 U.S.C. § 504, provides for the imposition of penalties against banks that, among other things, engage in "unsafe or unsound practices."  But the statute does not provide a private right of action, and a plain review of case law interpreting the term "unsafe or unsound practices" makes it clear that the allegations in the Compliant have no relation to the provisions of Section 29.

First, and most importantly, Section 29 does not provide a private right of action.  The imposition of civil penalties under Section 29 are to be carried out solely by either the Comptroller of the Currency or the Board of Governors of the Federal Reserve System.  *In re Bates*, 58 B.R. 915, 917 (Bankr. W.D. Tenn. 1986); *see generally Hudson v. U.S.*, 522 U.S. 93 (1997). On this basis alone, Ms. Harp's claims invoking Section 29 of the Federal Reserve Act should be dismissed.

Furthermore, the term "unsafe or unsound practices" refers to practices engaged in by a bank "that threaten[] a bank's financial soundness." *Matter of Seidman*, 37 F.3d 911, 927 (3d Cir. 1994).   Examples of unsafe or unsound practices include "paying excessive dividends, disregarding a borrower's ability to repay, careless control of expenses, excessive advertising, and inadequate liquidity." *Id.*  In short, the statute aims to "eradicate" practices by banks that may threaten the financial health and stability of banking institutions. *Id.*

The "unsafe and unsound" practices identified in Section 29 have no relation whatsoever to a credit union's decision to reject the attempted deposit of purported "instruments" with no legal value. Rather, Section 29 is directed towards ensuring the viability and solvency of banking institutions. In fact, if PFFCU regularly absolved the debts of members upon the receipt of

"instruments" with no legal value (such as the supposed "legal tender" submitted by Ms. Harp), only then would PFFCU potentially be engaging in an unsafe or unsound practice.

At bottom, Ms. Harp seeks to invoke sections of the Federal Reserve Act with no bearing on the allegations, based on her mistaken belief that she delivered a "Federal Reserve note" to PFFCU. Accordingly, Plaintiff's claims ostensibly asserting violations of the Federal Reserve Act should be dismissed for failure to state a claim.

> ### 2.   Ms. Harp's Allegations of "Security Fraud" are Hopelessly Vague and to the Extent a Basis for the Allegations Can be Discerned, Fail to State a Claim.

Ms. Harp also suggests that PFFCU, by failing to deposit her supposed "legal tender," committed "security fraud." Her allegation is vague and does not cite any legal authority – yet plaintiffs are required to satisfy heightened pleading standards imposed by the Private Securities Litigation Reform Act and Rule 9(b) of the Federal Rules of Civil Procedure when making such allegations. *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 59 (D. Del. 2020). Ms. Harp's nebulous and puzzling allegations regarding "security fraud" clearly do not meet the heightened pleading requirements of Rule 9(b). Notwithstanding her failure to plead this claim with specificity, PFFCU ventures to guess that Ms. Harp is referring to "securities fraud" as defined by the Securities Exchange Act of 1934 ("SEC Act"). The most common cause of action for securities fraud is an action brought pursuant to § 10(b) SEC Act, which requires a plaintiff to allege (1) a material misrepresentation; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets; (5) economic loss; and (6) "loss causation." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

Even when viewing Ms. Harp's allegations as true, it is clear that Ms. Harp's allegations have no relation to the purchase or sale of a security, and the allegations do not posit anything resembling a claim for "securities fraud." Rather, Ms. Harp merely is complaining about PFFCU's

refusal to deposit alleged "legal tender" to absolve her credit card debt.  To the extent Ms. Harp's vague allegations assert a claim for securities fraud, the claim should be dismissed pursuant to Rule 12(b)(6).

> **3.      Ms. Harp's Allegations Regarding Breach of Contract Fail to State a Claim Because PFFCU's Terms and Conditions Expressly Grant PFFCU the Right to Refuse Any Instrument for Deposit.**

In Pennsylvania, a cause of action for breach of contract requires a plaintiff to demonstrate (1) the existence of a contract between the plaintiff and defendant, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages resulting from a breach of that duty. *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1125 (Pa. Super. 2004); *MGMT Residential, LLC v. Reeves*, No. CV 22-3966, 2023 WL 2471263 at *2 (E.D. Pa. Mar. 10, 2023). Here, Ms. Harp cannot establish a breach of duty imposed by a contract, and thus she fails to state a claim for breach of contract.

Ms. Harp's claim for breach of contract hinges on the allegation that "Defendant failed to deposit Plaintiff's legal tender which resulted in a breach of contract."  [Complaint at Section III(C) ¶ 1.][4]  However, the Agreement, which constitutes the contract governing Ms. Harp's rights with respect to her account at PFFCU, undoubtedly defeat Ms. Harp's claim.   Under the Agreements and Disclosures, which Ms. Harp agreed to (and explicitly incorporates and relies

---

[4]     Ms. Harp alleges that she tendered a "bill of exchange" that constitutes legal tender. [Complaint at 3.] The notion that the notated Enclosure Form constituted a "bill of exchange" – either as a result of misunderstanding or a simply the careless use of legal terms— is patently implausible. A bill of exchange is "a negotiable instrument evidencing a debt on the part of the acceptor." *Nikimiha Sec. Ltd. v. Trend Grp. Ltd.*, 646 F. Supp. 1211, 1216 (E.D. Pa. 1986) (defendant, a Pennsylvania company, entered into a credit facility agreement with the plaintiff, an English company; the agreement established a 700,000 Pounds Sterling line of credit for the financing of imports and purchases, and provided that the resulting debt would be evidenced by bills of exchange). More specifically, a bill of exchange is a negotiable instrument typically used in international trade, defined as "an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer." *Lockton v. Lockton*, 157 F. Supp. 181, 3 V.I. 277 (D.V.I. 1957). In short, similar to promissory notes, bills of exchange are instruments through which one party promises to make payment to the other, usually in relation to the purchase of goods. Ms. Harp's allegations do not support, nor is it sensible to infer, that any such instrument is at issue here.

upon in her Complaint) PFFCU has the right to refuse to accept any instrument for deposit.  The

provision of the agreement entitled "Deposit of Items" governs the member's rights and

obligations regarding deposits:

> You may make deposits to Your Account using any method
> available from [PFFCU], including deposits in person, by mail or
> electronic means. **[PFFCU] ha[s] the right to refuse to accept any
> check or instrument for deposit at Our sole discretion.** If You
> deposit an item and it is returned unpaid, We will debit Your
> Account for the amount of the item and charge You a fee. You will
> be liable to [PFFCU] for the amount of any item You deposit which
> is return unpaid, and in addition, will be responsible for any of
> [PFFCU's] costs and expenses incurred in the collection of such
> returned item from You, including reasonable attorney's fees.

[Complaint Ex. A at 20 (emphasis added).]

It is clear that pursuant to this provision, PFFCU reserved the right to refuse the

"instrument" that Ms. Harp submitted in "payment" of her debt because, as noted above, the

modified Enclosure Form was not valid legal tender.  Accordingly, PFFCU's "fail[ure] to deposit

Plaintiff's legal tender" cannot constitute a breach of a duty imposed by the contract – as PFFCU

has no contractual duty to accept any instrument for deposit.  Because Ms. Harp's allegations,

taken as true, demonstrate that PFFCU did not breach a duty imposed by an applicable contract,

she fails to establish the second element of a breach of contract claim and it should be dismissed

for failure to state a claim.

> **4.      Ms. Harp's Claims for Breach of Fiduciary Duty Should Be
> Dismissed Because Banks and Credit Unions Do Not Owe
> Fiduciary Duties to Ordinary Customers under Pennsylvania
> Law.**

To plead a claim for breach of fiduciary duty, a plaintiff must demonstrate (1) the existence

of a fiduciary relationship between the plaintiff and defendant; (2) that the defendant negligently

or intentionally failed to act in good faith and solely for the plaintiff's benefit; and (3) that the

plaintiff suffered an injury caused by the breach of fiduciary duty. *Rosenbaum and Assocs., P.C. v. Scheff*, 287 A.3d 897 at *7 (Pa. Super. 2022).

Ms. Harp alleges in her Complaint that "[PFFCU]… knowingly breached their fiduciary duties owed to Plaintiff by not depositing legal tender delivered by Plaintiff to Plaintiff's account…" [Complaint ¶ 5.]  The claim for breach of fiduciary duty should be dismissed not only because Ms. Carp failed to submit valid legal tender to pay her VISA balance, but also because Ms. Harp has not established that a fiduciary relationship exists between herself and PFFCU. Under Pennsylvania law, banks do not owe fiduciary duties to their customers save for limited exceptional circumstances.

> Under Pennsylvania law, "**[a] bank/customer relationship is not a fiduciary one**." "In order for a fiduciary relationship to arise, there must be control exercised by the bank over the customer's business affairs." A fiduciary duty exists where "there is a 'special relationship,' which is one 'involving confidentiality, the repose or special trust or fiduciary responsibilities' " and "generally involves a situation where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence of the other.'" **A fiduciary relationship does not exist where parties "simply enter[ ] into a commercial, arms-length contract with one another."**

*Basement Solutions LLC v. Wells Fargo Bank, NA*, Civ. No. 21-104, 2021 WL 352012 (E.D. Pa. Feb. 2, 2021) (emphasis added); *see also Carloti v. Emps. of Gen. Elec. Credit Union No. 1161*, 717 A.2d 564, 567 (Pa. Super. Ct. 1998) (holding that Pennsylvania law does not recognize fiduciary duty between credit union and customer); *Shahin v. Delaware Federal Credit Union*, 602 Fed. App'x 50, 53-54 (3d Cir. 2015) (applying Delaware law, extending principle that fiduciary duty does not exist between bank and customer to action involving credit union).

Ms. Harp does not allege any facts that may give rise to an inference that her relationship with PFFCU went beyond the "commercial, arms-length" relationship typical for banks and their customers.  In fact, Ms. Harp's Complaint does not allege anything regarding the nature of the

relationship between herself and PFFCU, beyond the exhibits' demonstration of her status as a PFFCU member.   [Complaint Ex. A. at 6 (PFFCU monthly statement expresses that "We appreciate your membership!").]  Because ordinary customers are not owed fiduciary duties by their banking institutions, and there are no allegations in the Complaint to suggest Ms. Harp had a "special relationship" with PFFCU, Ms. Harp's claims sounding in breach of fiduciary duty should be dismissed.[5]

### 5.      Ms. Harp does not Plead Allegations Sufficient to Establish that PFFCU was a Trustee for her Benefit.

In furtherance of Ms. Harp's attempt to use various legal buzzwords to establish a claim, she alleges that: (1) a "trust contract" was created between herself and PFFCU; (2) "Defendant engaged in unsafe and unsound practices in conducting their affairs as trustee"; and (3) that PFFCU committed a "breach of trust."  [Complaint at Section III(C) ¶ ¶ 1, 5; Complaint at Section IV.] However, these contentions are "bald assertions" which are "devoid of further factual enhancement." *Iqbal*, 556 U.S., 662, 678 (2009).  Accordingly, this Court should dismiss any claim potentially arising from an alleged "trustee" relationship.

Pennsylvania law regarding trusts, including the duties of trustees, are set out by 20 Pa. C.S.A. § 7701, *et seq.*  The statutory scheme applies to all "express trusts." 20 Pa. C.S.A. § 7702. Breach of trust is defined as "violation by a trustee of a duty the trustee owes to a beneficiary." 20 Pa. C.S.A. § 7781.  Here, Ms. Harp does net set for any allegations that, taken as true, can plausibly establish that she was the beneficiary of any trust and that PFFCU was a trustee for her benefit.

---

[5]      Because Ms. Harp fails to satisfy the first element of a claim for breach of fiduciary duty, PFFCU does not set forth comprehensive argument on the second and third elements of the claim. However, for the sake of completeness and for the avoidance of doubt, Ms. Harp also fails to satisfy the second and third elements because she her allegations do not plausibly infer that PFFCU did not act in good faith by rejecting her purported "legal tender," and she does not plausibly allege any actual injuries. If anything, it is Ms. Harp who did not act in good faith by repeatedly insisting (and bringing suit on the basis) that her delivery of the notated Enclosure Form constitutes valid legal tender.

A trust is created by established procedures and circumstances, none of which are evidenced by the allegations in the Complaint.  A trust may be created by:

(1) transfer of property under a written instrument to another person as trustee during the settlor's lifetime or by will or other written disposition taking effect upon the settlor's death;
(2) written declaration, signed by or on behalf and at the direction of the owner of property as required by section 7732 (relating to requirements for creation - UTC 402), that the owner holds identifiable property as trustee; or
(3) written exercise of a power of appointment in favor of a trustee.

20 Pa. C.S.A. § 7731.

Further, a trust is created only if "the settlor signs a writing that indicates an intention to create the trust and contains provisions of the trust." 20 Pa. C.S.A. § 7732.  Finally, the "beneficiary" of a trust is defined as a person that "has a present or future beneficial interest in a trust." 20 Pa. C.S.A. § 7703.

Ms. Harp's allegations regarding the creation of a "trust" relationship are conclusory, and do not provide any factual support for the notion that a trust was created.  Ms. Harp only alleges that "Defendant offered plaintiff security in the form of an application and credit card and promised to deposit Plaintiff's payments for set-off of their accounts and debts.  Plaintiff accepted said offer of security and terms of application by granting the application and delivering the asset to Defendant which created the trust contract." [Complaint at Section III(C) ¶ 1.]  Stated differently, Ms. Harp alleges that by becoming a member of PFFCU, agreeing to PFFCU's terms and conditions, and receiving a credit card, a "trust contract" was created.  This cannot possibly be true.

Ms. Harp plainly does not allege that she signed any writing indicating an intention to create a trust.  The only written contract or instrument referenced in the Complaint with any bearing on the Parties' relationship is the Agreements and Disclosures.  A review of this document

clearly reveals that it intended not to create a trust, but rather to set out each Parties' rights and obligations with regard to Ms. Harp's account at PFFCU.

In the Third Circuit, courts will not "accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). Because Ms. Harp's allegations contain no facts sufficient to raise an inference that a trust existed, it is clear that PFFCU was not a trustee and that Ms. Harp was not a beneficiary of any trust. Ms. Harp's conclusory allegations on this front are meritless, and her claims sounding in "breach of trust" should be dismissed.

### B.      Amendment Would Be Futile

The court should dismiss Ms. Harp's Complaint with prejudice because any amendment would be futile. All of Ms. Harp's claims are based upon PFFCU's alleged failure to accept the alleged "legal tender" she submitted in payment of her VISA card balance. It is clear from the face of the pleadings, however, that Ms. Harp did not deliver valid legal tender to PFFCU for payment of her debt as a matter of law. And it is apparent that PFFCU's refusal to deposit the "legal tender" is not a breach of contract because the relevant agreement clearly grants PFFCU the right to refuse an instrument for deposit, and even if PFFCU owed Ms. Harp special duties (which is specifically denied), PFFCU did not engage in any wrongful conduct giving rise to *any* cognizable claim. Because the factual bases for Ms. Harp's complaint are deficient as a matter of law, this court should dismiss the Complaint with prejudice. *See Vallerey Stylianoudis v. Westinghouse Credit Corp.*, 785 F. Supp. 530 (W.D. Pa. 1992) (denying leave to amend because proposed Amended Complaint fails to state a claim under RICO and would therefore be futile); *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008) (denying leave to amend because claim is barred by statute).

V.    <u>**Conclusion**</u>

For the foregoing reasons, Defendant PFFCU respectfully requests, pursuant to Federal Rule of Civil Procedure 12(b)(6), that Plaintiff's Complaint be dismissed with prejudice.

Respectfully Submitted,

**DILWORTH PAXSON LLP**

By:   */s/ John J. Higson*
Dated: August 1, 2023             John J. Higson, Esquire (PA ID 80720)
*Attorney for Defendant Police & Fire Federal Credit Union*

123338844-4

<u>**CERTIFICATE OF SERVICE**</u>

I, John J. Higson, Esquire, hereby certify that on August 1, 2023, I caused the foregoing

Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), to

be served upon Plaintiff, pro se, via first class mail and electronic mail as follows:

Canya Aviana Harp
246 West Queen Lane
Apartment 2
Philadelphia, PA 19144
Canyah3@gmail.com

BY:   */s/ John J. Higson*
John J. Higson, Esquire

*Attorney for Defendant,*
*Police & Fire Federal Credit Union*

123338844-4