**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CANYA AVIANA HARP, | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 23-2577** |
| | : | |
| POLICE AND FIRE FEDERAL CREDIT | : | |
| UNION, | : | |
| Defendant. | : | |

McHUGH, J.                                                              August 10, 2023

## MEMORANDUM

This is an action by a *pro se* plaintiff against a local federal credit union. After the credit

union rejected Plaintiff's attempt to pay off her outstanding credit card debt using a handwritten

"bill of exchange," Plaintiff filed suit alleging an array of state and federal claims. Several of these

claims are not valid causes of action, and the remaining claims all rest on the credit union's failure

to recognize this "bill of exchange" as legal tender. Because this document is clearly not a valid

financial instrument, and because Plaintiff's claims rest on a mistaken understanding of how lines

of credit operate, I will dismiss Plaintiff's complaint in its entirety.

## I.    Relevant Background

Plaintiff Canya Harp is a member of Defendant Police and Fire Federal Credit Union

("PFFCU"). Compl. Ex. A ("Ex. A") at 4, ECF 1-1. Ms. Harp has a PFFCU credit card. *Id.* From

March 21, 2023 to April 6, 2023, Harp incurred charges totaling $5,480.46 on her PFFCU credit

card, in excess of her $5,000 credit limit. *Id.* In May of 2023, Ms. Harp attempted to use a "bill

of exchange" to satisfy her outstanding credit card debt. Compl. at 3. The "bill of exchange" that

Ms. Harp sent to PFFCU was fashioned from the Enclosure Form sent with her credit card

statement, on which Harp indicated that the "Amount Enclosed" was $5,480.46, with notations stating "ACCEPTED," "PAY TO BEARER," "PAY WITH INTEREST," and "PAY ON DEMAND." Ex. A. at 6-7.  Along with this "bill of exchange," Harp sent PFFCU a letter titled "Notice of Acceptance," which stated the following:

> I, Harp, Canya A/agent on behalf of CANYA AVIANA HARP/principal, hereby accept all titles, rights, interest, and equity owed to CANYA AVIANA HARP/principal.  I hereby instruct the Chief Financial Officer John La Rosa to apply the Principal's balance to the Principal's account . . . for each and every billing cycle for set off.  I also instruct the CFO to communicate in writing within five (5) business days of completed duties and instructions . . .

> I have performed my contractual obligations by remitting payment via bill of exchange as collateral security and legal tender.

Ex. A at 12.  Based on the Complaint and exhibits attached thereto, the alleged "contractual obligations" alluded to here involved a "trust contract" between Harp and PFFCU, whereby Harp would accept a "collateral security" from PFFCU via a "bill of exchange," which she could tender back to PFFCU "as legal tender . . . for set-off of an obligation."  Compl. at 3.

On May 31, 2023, PFFCU sent Harp a notice stating that it had not received payment for her credit card bill.  Ex. A at 13.  Ms. Harp again delivered a copy of the "bill of exchange" to PFFCU one week later, and in a corresponding letter alleged that PFFCU was violating its obligations under the Federal Reserve Act.  Compl. at 5; Ex. A at 14.  On June 13, 2023, PFFCU sent a letter to Harp informing her that the documents she provided were not legal tender and could not be used to pay for her credit card balance.  Ex. A at 1.  On June 19, 2023, Harp sent PFFCU a "Notice of Default" again asserting that PFFCU was not performing its "contractual obligations," was in breach of its contract with her, was not performing its fiduciary duties, and was exposing itself to "civil money penalties" under the Federal Reserve Act.  Ex. A at 15.  Two days later, Harp again sent her "bill of exchange" to PFFCU along with a letter, in which she accused PFFCU of

violating its obligations under the Federal Reserve Act and the "Bills of Exchange Act"[1] by failing to recognize her documents as legal tender.  Compl. at 5; Ex. A at 3.

On July 7, 2023, Ms. Harp filed this action *pro se*, asserting claims against PFFCU for breach of contract, "violation of security rights leading to security fraud," breach of fiduciary duties, and breach of trust, and seemingly alleges that PFFCU is violating her "rights" under the Federal Reserve Act.  As relief, Harp seeks specific performance of her "contract" with PFFCU, as well as over $5,325,000 in damages.  Compl. at 4.

## II.      Legal Standard

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  In deciding such a motion, courts consider "allegations contained in complaint, exhibits attached to complaint, and matters of public record."  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196-97 (3d Cir. 1993).

## III.     Discussion

PFFCU moves to dismiss all of Harp's claims under Rule 12(b)(6), arguing that Harp fails to state any cognizable claim.  Although courts are obliged "to liberally construe a *pro se* litigant's pleadings," *Higgs v. Att'y Gen. of the U.S*., 655 F.3d 333, 339 (3d Cir. 2011), "*pro se* litigants must still allege sufficient facts in their complaints to support a claim.  *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 245 (3d Cir. 2013).  Here, Harp has failed to set forth sufficient facts to state any cognizable claim.  And because all of Harp's claims rest upon her mistaken belief that her

---

[1] There is no Act of Congress with this title, though a "Bills of Exchange Act" was passed in Pennsylvania in 1821.  *See McPherson v. Tompkins Tr. Co*., 792 F. App'x 142, 143 (2d Cir. 2020) (briefly discussing statute).

"bill of exchange" was valid legal tender, and are based on a fundamental misunderstanding of the operation of a credit card, I will dismiss the Complaint with prejudice and without leave to amend. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (noting that complaint may be dismissed without leave to amend where "amendment would be inequitable or futile").

### A.  Harp's breach of contract claim fails.

Ms. Harp primarily claims that PFFCU breached its contractual obligations to her when it failed to honor her "bill of exchange."  A breach of contract claim under Pennsylvania law requires a plaintiff to demonstrate (1) the existence of a contract between the plaintiff and defendant, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) damages. *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1125 (Pa. Super. Ct. 2004).  While the Complaint is vague about what the underlying "contract" consisted of, it appears that Harp is alleging a breach of (1) a "trust contract" whereby PFFCU allegedly agreed to essentially give Plaintiff a blank check in the form of her credit card and/or (2) PFFCU's supposed contractual obligations to its customers to accept and deposit legal tender.  Both contract claims fail.

First, Harp's confusing complaint does not set forth sufficient factual material to plead the existence of a contract whereby PFFCU would forgive Harp's debts accumulated on her credit card.  The Complaint vaguely alleges the existence of a "trust contract" with PFFCU that formed when Plaintiff opened her credit card account, whereby Plaintiff would "accept[] collateral security offered via bill of exchange by Defendant, and tender[] it back to Defendant as legal tender . . . for set off of an obligation."  Compl. at 3.  But Harp does not plead sufficient facts to demonstrate the "essential terms" of the contract, nor the exact provision of the alleged contract that PFFCU violated.  To the extent that I can make sense of Harp's allegations, she appears to allege that PFFCU gave her essentially a blank check that she could use to pay off her credit card debt.  But

4

at their core, these allegations and arguments fundamentally misunderstand the operation of a line of credit in the context of a consumer credit card, and rely on Harp's mistaken belief that by opening her credit card account, the *credit union* was accruing debt owed to *her*.  *See, e.g.*, Pl.'s Opp. at 7, ECF 15 ("The $5,000 applied for by the Plaintiff was delivered by the Defendant from the notes in the dividend bearing account owned by the Plaintiff to a credit device ending with the digits 5677 held by the Plaintiff."); *id*. at 11 (referring to her application to open her account with PFFCU as a "blank check"); *id*. at 12 (noting that Harp waited to "receive the credits of $5,000 on the credit device" and seeming to imply that by the interest accruing on her credit balance belonged to her, rather than PFFCU); *id.* at 14 ("The Bank borrowed Plaintiff's security which was the application, gave security of a bill for allowing them to borrow the initial security that generates interest, and now have to pay the interest in the check to the Plaintiff's account for set-off.").

Second, Ms. Harp seems to suggest that PFFCU violated its contractual obligations to accept and deposit all legal tender presented by its members, including Harp.  But per the terms of Harp's account agreement, PFFCU has discretion to refuse any financial instrument presented for deposit:

> You may make deposits to Your Account using any method available from Us, including deposits in person, by mail or electronic means.  *We have the right to refuse to accept any check or instrument for deposit at Our sole discretion*.  If You deposit an item and it is returned unpaid, We will debit Your Account for the amount of the item and charge You a fee.  You will be liable to Us for the amount of any item You deposit which is returned unpaid, and in addition, will be responsible for any of Our costs and expenses incurred in the collection of such returned item from You, including reasonable attorney's fees.

Ex. A at 21 (emphasis added).

Moreover, even if PFFCU lacked such discretion, it is clear from the Complaint's exhibits that Harp's "bill of exchange" was not valid legal tender.  In other circumstances, a bill of exchange

is certainly a valid financial instrument, often used to keep track of debt in international trade.  *See Nikimiha Sec. Ltd. v. Trend Grp. Ltd.*, 646 F. Supp. 1211, 1216 (E.D. Pa. 1986) (defendant entered into agreement establishing a 700,000 Pounds Sterling line of credit for the financing of imports and purchases, and provided that the resulting debt would be evidenced by bills of exchange).  But here, rather than a legally enforceable document noting an existing debt that PFFCU owed to her, Harp simply handwrote an array of financial buzzwords on her credit card statement and tried to pass this off to PFFCU as valid legal tender for *her* credit card debt.  This is not a valid financial instrument, and other courts nationwide have rejected such "frivolous" attempts to satisfy a debt through a fictitious "bill of exchange."  *See Hennis v. Trustmark Bank*, No. 21-cv-20, 2010 WL 1904860, at *5 (S.D. Miss. May 10, 2010) (collecting cases and noting that "[f]rom coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of "bills of exchange" have been dismissed as frivolous"); *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 760 (W.D. Va. 2007) (discussing the "revisionist legal history and conspiracy theory" basis of claims like Harp's, whereby someone attempts to pass off a "bill of exchange" as a legitimate form of payment to satisfy a debt).[2]

Harp therefore fails to state a breach of contract claim, and this claim will be dismissed.

---

[2] In her opposition brief, Harp for the first time claims that this "bill of exchange" was "enforceable as a check." Pl.'s Opp. at 7.  But it is "axiomatic" that a complaint may not be amended by briefing in opposition to a motion to dismiss, *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988), and regardless, the document she claims was a "check" is clearly her credit card statement and contains insufficient information for PFFCU to have cashed a check to cover her credit card debt – such as the account number that the funds would be pulled from.

**B. Harp fails to state a claim for breach of trust.**

Because Harp alleges that PFFCU failed to perform its obligations under an alleged "trust contract," Harp also brings a claim for breach of trust. But a breach of trust claim generally arises under circumstances where a trustee mishandles property or assets that are placed into a trust. *See* 20 Pa. C.S. § 7781 (defining breach of trust as "violation by a trustee of a duty the trustee owes to a beneficiary"). Cases involving a breach of trust claim thus involve fundamentally different factual scenarios than the circumstances present here. *See, e.g.*, *In re Walker*, 208 A.3d 472, 477-78 (Pa. Super. Ct. 2019) (analyzing breach of trust claim where plaintiffs alleged that trustee breached duty by making certain investments with trust assets). Indeed, Harp does not in any way establish the existence of a trust nor any details to support the allegation that PFFCU would be the trustee of such a trust, beyond the statement that she had a "trust contract" with PFFCU. This claim will therefore be dismissed.

**C. Harp fails to state a claim for breach of fiduciary duty.**

Harp further claims that PFFCU breached its fiduciary duties to her as a member. Preliminarily, courts generally do not find that a bank has a fiduciary relationship with its members under Pennsylvania law. *See Deckard v. Emory*, No. 17-cv-5182, 2020 WL 3960421, at *5 (E.D. Pa. July 13, 2020) (DuBois, J.) (cleaned up) (stating that "as a matter of law, a bank/customer relationship is not a fiduciary one"); *First Fed. Sav. & Loan Ass'n of Hazleton v. Off. of State Treasurer, Unclaimed Prop. Rev. Comm.*, 669 A.2d 914, 915 (Pa. 1995) (holding that it is "well established that the legal relationship between a financial institution and its depositors is based on contract). But even if PFFCU has a fiduciary duty to her as a member, Harp's claim here is solely based on PFFCU's refusal to accept her "legal tender." As discussed, however, Harp's "bill of exchange" is not a valid financial instrument, and this claim will also be dismissed.

7

**D.  Harp does not plead a claim for "security fraud."**

Ms. Harp also claims that PFFCU engaged in "security fraud" by failing to accept her "security" – her supposed bill of exchange.  Preliminarily, I note that any allegations of fraud must be pled "with particularity" under Rule 9(b) of the Federal Rules of Civil Procedure, and Harp's vague and confusing allegations in her Complaint fail to satisfy this requirement.  But more broadly, it is unclear what type of claim Harp seeks to advance as "security fraud."  To the extent that she is invoking a securities fraud claim under the Securities Exchange Act of 1934, claims under that statute deal with wholly different circumstances than those present here.  The most common cause of action for securities fraud is brought pursuant to Section 10(b) of the Act, codified at 15 U.S.C. § 78j, and involves deceptive conduct connected to the purchase or sale of a "security."  The allegations in Harp's complaint – which largely revolve around PFFCU's refusal to accept Harp's alleged "legal tender" – are fundamentally different from the conduct that gives rise to a claim for securities fraud under this statute.  *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (identifying elements of a securities fraud claim).  Ms. Harp's "security fraud" claim is therefore dismissed.

**E.  Harp cannot sue under the Federal Reserve Act.**

Finally, to the extent that Harp seeks to assert a claim under the Federal Reserve Act, she lacks a cause of action to do so.  In her Complaint, Harp seems to suggest that PFFCU was violating Section 16 of the Federal Reserve Act, 12 U.S.C. §§ 411-21, which governs the issuance and redemption of Federal Reserve notes.  As a result, Harp alleges that PFFCU is subject to penalties under Section 29 of the Federal Reserve Act, 12 U.S.C. § 504, which imposes penalties on banks for an array of misconduct.  But the imposition of civil penalties under Section 29 is carried out by federal officials, and private individuals do not have a private right of action to enforce Section

29 of the Federal Reserve Act. *Benz-Puente v. Truist Fin*., No. 23-cv-2682, 2023 WL 4763998, at *2 (E.D. Pa. July 26, 2023) (Smith, J.) (compiling cases supporting finding that Section 29 "does not create a private right of action"). Harp therefore cannot sue under the identified provisions of the Federal Reserve Act and thus fails to state a claim under that statute.

## IV.   Conclusion

For the reasons set forth above, Defendant's Motion will be granted. Because nothing in the Complaint or response to this Motion shows any conceivable factual basis for a claim, amendment would be futile. *Grayson,* 293 F.3d at 108. An appropriate order follows.


  /s/ Gerald Austin McHugh
United States District Judge